1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**GEARINGER LAW GROUP**
825 VAN NESS AVENUE, 4TH FLOOR
SAN FRANCISCO, CALIFORNIA
94109-7847
Tel. (415) 440-3102

BRIAN GEARINGER (State Bar #146125)
R. STEPHEN M. LAROE (State Bar #245269)

**LAW OFFICES OF CASPER,
MEADOWS, SCHWARTZ & COOK**

2121 N. CALIFORNIA BLVD., SUITE 1020
WALNUT CREEK, CALIFORNIA
94596-7333
Tel. (925) 947-1147

ANDREW C. SCHWARTZ (State Bar #64578)

Attorneys for Plaintiff MITCHELL KATZ

E-filing

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MITCHELL KATZ,

               Plaintiff,

      v.

COUNTY OF CONTRA COSTA, ALICIA
SPENGER, CHRISTOPHER BUTLER,
CARL MARINO, STEPHEN TANABE,
WILLIAM HOWARD, SHERIFF DAVID
LIVINGSTON, TOWN OF DANVILLE and
DOES ONE to FIFTY, inclusive.

           Defendants.

Case No. CV 11 5771 LB

**COMPLAINT FOR DAMAGES FOR
VIOLATIONS OF CIVIL RIGHTS AND
OTHER WRONGS**

**JURY TRIAL DEMANDED**

Date Action Filed:
Trial Date:

Plaintiff Mitchell Katz ("Plaintiff") complains of Defendants, and each of them, and alleges that:

## I.    JURISDICTION AND VENUE

1.    The Court has jurisdiction to grant the relief requested herein pursuant to the Civil Rights Acts, 42 U.S.C. §1983, *et seq*, the Judicial Code, 28 U.S.C. §§1331, 1343 and 2201, the

constitutions of the United States and State of California, Cal. Govt. Code §815.2, and California common law.

2.     Venue in this Court is proper because the acts complained of occurred in the Northern District of California, and all parties live, work or are situated in or around the County of Contra Costa, California.

3.     On May 25, 2011, pursuant to Cal. Government Code, § 910, Plaintiff timely presented a claim for damages to the Town of Danville. On June 2, 2011, the Town of Danville rejected the claim. (A true copy of the June 2, 2011 Notice of Status of Claim by the Town of Danville is attached as Exhibit A).

4.     On May 25, 2011, pursuant to Cal. Government Code, § 910, Plaintiff timely presented a claim for damages the County of Contra Costa. On June 28, 2011, the County of Contra Costa rejected the claim. (A true copy of the June 28, 2011 Board of Supervisors Order by the County of Contra Costa is attached as Exhibit B).

## II.     PARTIES

5.     Plaintiff is, and at all times mentioned herein was, a resident of Livermore, California. Plaintiff owns and operates Mitchell Katz Winery located at 1188 Vineyard Avenue, Pleasanton, California. (See www.mitchellkatzwinery.com).

6.     Defendant Alicia Spenger ("Ms. Spenger") is, and at all times mentioned herein was, (1) a resident of Livermore, California, (2) the wife of Plaintiff, (3) the mother of Plaintiff's two children and (4) acted under color of state law.

7.     Plaintiff is informed and believes and thereupon alleges that: Defendant Christopher Butler ("Private Investigator Butler") is, and at all times mentioned herein was, (1) a resident of Concord, California, (2) a "Private Patrol Operator" licensed by the State of California Bureau of Security and Investigative Services and (3) acted under color of state law. Private Investigator Butler's license number 14798 was issued on February 26, 2003 and became delinquent on February 28, 2011. Private Investigator Butler operated a business entitled "Christopher B. Butler Investigations" doing business as "Butler & Associates Private

Investigations" in Walnut Creek, California. Private Investigator Butler was a sworn peace officer of the City of Antioch Police Department.

8.      Plaintiff is informed and believes and thereupon alleges that: Defendant Carl Marino ("Mr. Marino") is, and at all times mentioned herein was, (1) an employee of Christopher B. Butler Investigations and/or the agent of Private Investigator Butler and (2) acted under color of state law. Mr. Marino is a "San Francisco Bay Area model/actor" who is "from New York originally." (See www.carlmarino.net).

9.      Plaintiff is informed and believes and thereupon alleges that: Defendant Contra Costa County Sheriff's Office Deputy Stephen Tanabe ("Deputy Tanabe") is, and at all times mentioned herein was, (1) a resident of Alamo, California, (2) a sworn peace officer, (3) an employee of the Contra Costa County Sheriff's Office, and/or (4) an employee of the Danville Police Department, and (5) acted under color of state law. Deputy Tanabe is sued in both his official capacity and in his individual capacity.

10.      Plaintiff is informed and believes and thereupon alleges that: Defendant Contra Costa County Sheriff's Office Deputy William Howard ("Deputy Howard") is, and at all times mentioned herein was, (1) a resident of Contra Costa County, (2) a sworn peace officer, (3) an employee of the Contra Costa County Sheriff's Office, and/or (4) an employee of the Danville Police Department, and (5) acted under color of state law. Deputy Howard is sued both in his individual and official capacities.

11.      Defendant Sheriff David Livingston ("Sheriff Livingston") is, and at all times mentioned herein was, employed as the sheriff of Defendant County of Contra Costa, acting within the course and scope of his employment, and under the color of state law. Sheriff Livingston is sued both in his individual and official capacities.

12.      Defendant County of Contra Costa ("County") is, and at all times mentioned herein was, a public entity duly organized and existing under the laws of the State of California. The County operates the Contra Costa County Office of the Sheriff ("Sheriff's Office").

/ / /

/ / /

13.     Defendant Town of Danville, California ("Danville") is, and at all times mentioned herein was, a public entity duly organized and existing under the laws of the State of California. Danville operates the Danville Police Department.

14.     Plaintiff is ignorant of the true names and capacities of the defendants sued in this litigation as Does One through Fifty, inclusive and, as a result, sues these defendants by these fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of these defendants once they have been ascertained. Plaintiff is informed and believes and thereupon alleges that each of the fictitiously named defendants (1) is in some manner responsible for the injuries and damages to Plaintiff alleged in this Complaint and (2) acted under color of state law.

15.     Plaintiff is informed and believes and thereupon alleges that at all times relevant to this litigation, Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe, Deputy Howard, County, Danville and Does One through Fifty, and each of them, were the agents, servants, and employees of their codefendants, and that these defendants, in doing the things mentioned in this Complaint, were acting within the course and scope of their authority as such agents, servants, and employees, and were acting with the permission and consent of their codefendants.

16.     The individual defendants carried out the actions complained of in their individual capacities, under color of state law, and/or in the course and scope of their employment as employees of the County and Danville. The County and Danville is obligated, under Cal. Government Code, §§815.2 and 825(a), to pay any compensatory damages awarded against some or all of the individual defendants. Nevertheless, all Defendants are jointly and severally liable for any damage awards.

### III.     STATEMENT OF FACTS

### A.     Ms. Spenger Hires Private Investigator Butler to Attempt a "Dirty DUI on Plaintiff at a Cost of $6,601.17

17.     In the fall of 2010, Plaintiff told Ms. Spenger that he wanted to divorce her.

18.     Plaintiff is informed and believes and thereupon alleges that: Shortly after Plaintiff told Ms. Spenger that he wanted to divorce her, Ms. Spenger met with Private Investigator Butler sometime in November 2010, and "she was very, very angry – very angry" with Plaintiff. Private Investigator Butler told Ms. Spenger about the possibility of attempting to have Plaintiff arrested for driving under the influence by engineering a ruse in which co-conspirators of his would ply Plaintiff with alcohol and then Butler would tip off a law enforcement official if Plaintiff attempted to drive his vehicle following the ruse. Private Investigator Butler referred to this practice as a "Dirty DUI." Ms. Spenger responded that "she wanted it [for Plaintiff to be arrested for driving under the influence of alcohol] badly."

19.     Plaintiff is informed and believes and thereupon alleges that: On Tuesday, November 23, 2010, Ms. Spenger and Private Investigator Butler entered into a "Client Service Agreement" ("Agreement"). The Agreement was limited to the following assignment: "Provide the Client with installation of a vehicle GPS system on the Client's vehicle. Provide the Client with the removal of the vehicle GPS system at the Client's request." The Agreement further provided in pertinent part: "Client agrees to pay … the sum of $199 … for the vehicle GPS system installation, plus a $200 … refundable deposit for the vehicle GPS system hardware, plus $250 … per month to keep the vehicle GPS active." (A true copy of the November 23, 2010 Agreement is attached as Exhibit C).

20.     Plaintiff is informed and believes and thereupon alleges that: The Agreement was a cover for the actual assignment; that is, Ms. Spenger hired Private Investigator Butler for a Dirty DUI – to attempt to have Plaintiff arrested for driving under the influence by means of Butler engineering a ruse in which co-conspirators of Butler would ply Plaintiff with alcohol and then Butler would tip off a law enforcement official if Plaintiff attempted to drive his vehicle following the ruse.

21.     Plaintiff is informed and believes and thereupon alleges that: Prior to November 23, 2010, Private Investigator Butler previously had arranged for at least one Dirty DUI; that is, at least one other male victim was arrested at the request of a female client by means of Butler engineering a ruse in which co-conspirators of his plied the victim with alcohol and then he or

one of his co-conspirators tipped off a law enforcement official when the victim attempted to drive his vehicle following the ruse. Private Investigator Butler required that his clients pay for an attempted Dirty DUI. On Wednesday, November 24, 2010, Ms. Spenger paid Private Investigator $6,601.17 – or some portion thereof – for the attempted Dirty DUI on Plaintiff.

22.    At the time that Ms. Spenger hired Private Investigator Butler, Plaintiff and Ms. Spenger were in the process of divorcing and, as a result, they were embroiled in a dispute over custody of their two children. Plaintiff is informed and believes and thereupon alleges that Ms. Spenger hired Private Investigator Butler to entrap Plaintiff by having him arrested for driving under the influence of an alcoholic beverage in order to obtain leverage over Plaintiff in the divorce proceedings.

**B.    The Setup for a "Dirty DUI" Via a "Reality Television Show"**

23.    On Friday, January 14, 2011, Plaintiff was at the "The Vine" located at 480 Hartz Avenue, Danville, California. Plaintiff was discussing what he believed to be a business proposal regarding a potential reality television show pertaining to Plaintiff's winemaking business.

24.    For several weeks prior to January 14, 2011, a "television producer" – identifying himself as "John" – made numerous telephone calls to Plaintiff and sent Plaintiff numerous emails requesting that they meet. (Plaintiff is informed and believes and thereupon alleges that 'John' is, and at all relevant times was, Mr. Marino. All further references to 'John' should be considered a reference to Mr. Marino). The purpose of the meeting, according to 'John', was to interview Plaintiff regarding his successful winemaking business. Plaintiff tried to get 'John' to come to Plaintiff's winery; however, 'John' insisted that the meeting take place in Danville. Plaintiff ultimately agreed to meet with 'John' on January 14, 2011 at The Vine.

25.    At The Vine, 'John' introduced himself to Plaintiff as a producer of a reality television show through the A&E Network. 'John' further introduced Plaintiff to "Benny" who stated that he was very interested in the wine business and asked if he could sit in on the meeting between 'John' and Plaintiff. Plaintiff proceeded to discuss his winemaking business with 'John' while "Benny" purchased drinks for Plaintiff.

26.     Next, a woman who was using crutches sat down near Plaintiff, 'John' and "Benny." The unidentified woman stated to them that she needed to rest her leg. Then, three additional women joined her. These women noticed Plaintiff and claimed that they recognized him from his winery. These four women then joined the informal business meeting under the pretense of being familiar with Plaintiff's winery.

27.     Plaintiff is informed and believes and thereupon alleges that 'John', "Benny" and the four women all were employed by Private Investigator Butler for the purposes of this contrived meeting with Plaintiff. 'John', "Benny" and the four women encouraged Plaintiff to consume alcohol. Plaintiff ended up consuming more alcohol than he otherwise would have knowingly consumed on this occasion. Unbeknownst to Plaintiff, the premise for the meeting – to discuss a relating television show – was false. In fact, the meeting simply was a ruse to entrap Plaintiff with a "Dirty DUI."

28.     When Plaintiff left The Vine, he immediately was pulled over by Deputy Tanabe – without probable cause – and arrested for driving under the influence of an alcoholic beverage.

29.     Prior to that day, Plaintiff was never arrested for driving under the influence of an alcoholic beverage.

### C.     Ms. Spenger Pays Extra to Have Butler Continue the Ruse

30.     On January 18, 2011, 'John' sent Plaintiff an email that stated in pertinent part:

I wanted to check your availability for the tour of the winery on Friday [January 21, 2011]. I will be bringing a small crew with me and I was hoping that we could start around 1 pm. I will have a camera guy that will be taking some footage, but this is not for any broadcast reasons. We will just use this footage for production purposes. We just want the layout of grounds and building. We would also like to meet some of the people who are working. It will be very casual. We will not interrupt them while they are doing their jobs and would only do a quick introduction. We just kind of wanted to get an overview on how the winery operates, the people there, and what the set up is. Please let me know as soon as you can if this works

1    for you. You can just respond to this email or give me a call. I look forward

2    to moving forward with this.

3    31.    On Friday, January 21, 2011, 'John' and several other unidentified persons met

4    with Plaintiff at Mitchell Katz Winery.

5    32.    On Monday, January 24, 2011, 'John' sent Plaintiff an email that stated in

6    pertinent part:

7    It was great seeing you at your winery and getting to meet all of the

8    people who work with you. We were impressed with how everything runs

9    and how the people there feel like a family. It is also a gorgeous location to

10   shoot at. We are at the part of the process now that takes a little time. We

11   have other people looking at the footage and information provided. They

12   are evaluating everything and determining the next step in the process,

13   budget, etc., before we can start to film anything. There are no guarantees

14   on the project, but we are confident that it is something that we can put

15   together well enough to pitch to the networks, primarily the people at A&E.

16   I will keep you informed as things progress, but now it is kind of a waiting

17   game. If you have any questions, feel free to let me know what they are at

18   any time. We just need to be patient now. Thanks again for opening up your

19   winery and your life to us.

20   33.    On Wednesday, March 30, 2011, 'John' sent Plaintiff an email that stated in

21   pertinent part:

22   I hope you are doing well. The first thing I want to do is apologize to

23   you for my part of the set up. As you can see, I never wanted to be involved

24   in Butler's shady activities and that is why I put an end to them and also let

25   the DOJ [United States Department of Justice] know what was done to you

26   and others. I hope you can forgive me and understand that ultimately I was

27   the good guy in this. I would love to apologize to you in person and answer

28

any questions that you might have of me. Let me know if you would be interested in this. Thanks.

34.    Plaintiff responded via email the same day, asking: "Did my wife know that is what you guys were doing?"

35.    On Thursday, March 31, 2011, 'John' responded to Plaintiff's March 30 email in which Plaintiff asked about his wife's involvement in the Dirty DUI in pertinent part: "She knew exactly what we were doing. She is the one that wanted us to go to the winery with the camera and do those interviews after the initial set up. She paid an extra $1500 to Butler for that. She thought it would look more legitimate. I actually tried to talk her out of it but she was adamant." (A true copy of the email string from January 18, 2011 and March 31, 2011 between 'John' and Plaintiff is attached as Exhibit D).

**D.    Deputy Tanabe's Colleague Confesses to the "Dirty DUI"**

36.    Plaintiff is informed and believes and thereupon alleges that: On Wednesday, February 23, 2011 Sergeant Detective Jason Vorhauer ("Detective Vorhauer") of the Contra Costa County Sheriff's Office interviewed Deputy William Howard ("Deputy Howard") of the Contra Costa County Sheriff's Office. Deputy Howard wanted to speak to Detective Vorhauer about the recent arrest of Contra Costa Narcotics Enforcement Team Commander Norman Weilsch ("Commander Weilsch") and Private Investigator Butler for narcotics trafficking.

37.    Plaintiff is informed and believes and thereupon alleges that: Deputy Howard told Detective Vorhauer that he had information about Deputy Tanabe. Deputy Howard believed that Deputy Tanabe could be involved in some possible illegal activity with Private Investigator Butler.

38.    Plaintiff is informed and believes and thereupon alleges that: Deputy Howard told Detective Vorhauer that he had met Deputy Tanabe while working as a per-diem Deputy for the Court Services Division of the Contra Costa County Sheriff's Office. Deputy Howard stated that he also had worked a few shifts with Deputy Tanabe on patrol in the Town of Danville. Deputy Howard stated that he and Deputy Tanabe have a "casual/friendly/business relationship."

39.     Plaintiff is informed and believes and thereupon alleges that: Deputy Howard further told Detective Vorhauer that on Friday, January 14, 2011, he was on patrol with Deputy Tanabe in the Town of Danville. Deputy Howard stated that during this shift Deputy Tanabe received approximately eight to ten personal cell phone calls from someone Deputy Tanabe identified as his "PI friend." (The "PI friend" later was identified as Private Investigator Butler by Deputy Tanabe). Deputy Howard stated that during these phone calls it appeared that Deputy Tanabe was receiving updates about an individual, who later was identified as Plaintiff, who was drinking alcoholic beverages at a wine bar. The wine bar later was identified as "The Vine" located at 480 Hartz Avenue, Danville, California. Deputy Howard stated that he only could hear Deputy Tanabe's side of the conversation, but it appeared that Private Investigator Butler was giving Deputy Tanabe updated information relating to Plaintiff's sobriety.

40.     Plaintiff is informed and believes and thereupon alleges that: During the course of the conversations between Deputy Tanabe and Private Investigator Butler, Butler gave Deputy Tanabe a description of the vehicle that Plaintiff would be driving once he left The Vine. Deputy Tanabe then drove around the immediate vicinity of The Vine and located a white pickup truck that Private Investigator Butler described as belonging to Plaintiff. While driving past The Vine, Deputy Howard heard Deputy Tanabe ask Private Investigator Butler if that was him (Private Investigator Butler) sitting in a Hummer parked next to The Vine. As Deputy Tanabe drove past the Hummer, Deputy Howard could see that the Hummer was occupied by a male subject. (Later, when members of the United States Department of Justice ("Department of Justice") arrested Private Investigator Butler, they seized a Hummer that belonged to Private Investigator Butler).

41.     Plaintiff is informed and believes and thereupon alleges that: Deputy Howard said that after locating the white pickup truck, Deputy Tanabe found a location close to the pickup truck at which Deputy Tanabe could hide his police vehicle and watch the pickup truck. Deputy Howard said that a short time later, Plaintiff came out of The Vine and approached the pickup truck. Deputy Howard said that Tanabe confirmed with Private Investigator Butler that the individual at the pickup truck was Plaintiff, the intended target. Plaintiff then got into the pickup

truck, drove a short distance, parked the pickup truck a short distance from The Vine and walked back to The Vine. After a short wait, Plaintiff reemerged from The Vine, walked to his pickup truck, got inside and started to drive away.

42. Plaintiff is informed and believes and thereupon alleges that: At some point during this sequence of events, Deputy Howard asked Deputy Tanabe what was going on. Deputy Tanabe responded that they were about to conduct a "Dirty DUI" stop on Plaintiff.

43. Plaintiff is informed and believes and thereupon alleges that: Deputy Howard observed that immediately after Plaintiff started to drive his pickup truck, Deputy Tanabe pulled his patrol vehicle behind the pickup truck and followed Plaintiff for a short distance. At some point while Deputy Tanabe was following the pickup truck, Deputy Tanabe alleged that Plaintiff made a right hand turn without signaling. Deputy Tanabe then immediately conducted a traffic enforcement stop based upon this alleged probable cause.

44. Plaintiff is informed and believes and thereupon alleges that: Deputy Tanabe then performed a Driving Under the Influence investigation of Plaintiff and subsequently arrested him for driving under the influence of an alcoholic beverage.

45. Plaintiff is informed and believes and thereupon alleges that: Deputy Tanabe processed Plaintiff at the Danville Police Station and then transported Plaintiff to the Martinez Detention Facility. While discussing the arrest of Plaintiff, Deputy Howard told Deputy Tanabe that he felt sorry for Plaintiff because just before Deputy Tanabe arrested Plaintiff, Plaintiff had been in The Vine discussing a business deal with unidentified persons to be featured in a reality show. Deputy Howard felt that Plaintiff's arrest might affect his chances of getting the reality show. Deputy Tanabe responded that Deputy Howard should not worry because the whole thing was a "set up." Deputy Tanabe did not explain to Deputy Howard what he meant by "set up." Deputy Tanabe added that he arrested Plaintiff because Plaintiff needed to be "dirtied" up for a future court date. Deputy Howard felt uncomfortable with Plaintiff's arrest, but because of his inexperience, Deputy Howard did not question Plaintiff's arrest at that time.

46. Plaintiff is informed and believes and thereupon alleges that: On Wednesday, February 16, 2011 (the date that members of the Department of Justice arrested Private

Investigator Butler and Commander Weilsch) at approximately 8:00pm, Deputy Tanabe called Deputy Howard at his residence. Deputy Tanabe asked Deputy Howard if he could come over for a visit. Deputy Howard agreed to meet with Deputy Tanabe. Deputy Howard said that he could tell that something was bothering Deputy Tanabe.

47. Plaintiff is informed and believes and thereupon alleges that: When Deputy Tanabe arrived he asked Deputy Howard if he had been watching the news about the arrests of Private Investigator Butler and Commander Weilsch. Deputy Howard responded that he had not yet watched the news. Deputy Tanabe then told Deputy Howard about the arrests of Private Investigator Butler and Commander Weilsch. Deputy Tanabe stated that he felt that his telephone probably was "bugged" because of his personal relationship with Private Investigator Butler. Deputy Tanabe then confirmed that his "PI friend" was Private Investigator Butler.

48. Plaintiff is informed and believes and thereupon alleges that: Deputy Tanabe continued by telling Deputy Howard that they no longer could talk on the phone because they probably were being "bugged." Deputy Tanabe went on to tell Deputy Howard that the police were going to start investigating him (Deputy Tanabe) because of the "Dirty DUIs."

49. Plaintiff is informed and believes and thereupon alleges that: Deputy Tanabe said that he knew that the police were going to serve a search warrant on his home soon, and he was concerned because an item that he possessed was going to be found during the search of his residence. Deputy Tanabe asked if he could leave something at Deputy Howard's residence until "things settled down." Deputy Tanabe told Deputy Howard that he (Deputy Tanabe) already had instructed his wife on how to act when the police served the search warrant and executed the search. Deputy Tanabe added that he felt that when the police served the search warrant that they would kill his dog to punish him.

50. Plaintiff is informed and believes and thereupon alleges that: Deputy Howard agreed to take the item from Deputy Tanabe. Deputy Tanabe then went out to his vehicle and retrieved an item covered with a black plastic garbage bag. Deputy Tanabe asked Deputy Howard to place the item in his attic to keep it hidden. Deputy Howard said that he felt

uncomfortable with what Deputy Tanabe was asking him to do, but that Deputy Howard did not want to cause a confrontation with Deputy Tanabe so he took the item.

51.     Plaintiff is informed and believes and thereupon alleges that: Deputy Howard told Detective Vorhauer that he did not look in the bag and did not know what it contained. Deputy Howard said that after one week of having the item and hearing more information about the arrests of Private Investigator Butler and Commander Weilsch, Deputy Howard felt that he might be hiding something illegal. After much thought, Deputy Howard decided to contact the Contra Costa County Sheriff's Office and turn over the item that Deputy Tanabe had asked him to hide.

52.     Plaintiff is informed and believes and thereupon alleges that: Detective Vorhauer asked Deputy Howard what he knew about the relationship between Deputy Tanabe and Private Investigator Butler. Deputy Howard stated that he knew that Deputy Tanabe started working for Private Investigator Butler at his private investigation business shortly after Deputy Tanabe was fired from his position as a sworn peace officer with the City of Antioch Police Department. Deputy Howard stated that he believed that Deputy Tanabe and Private Investigator Butler spoke to each other approximately three to four times per week. Deputy Howard added that Deputy Tanabe recently was conducting surveillance for Private Investigator Butler while Deputy Tanabe was employed by the Contra Costa County Sheriff's Office.

53.     Plaintiff is informed and believes and thereupon alleges that: On Wednesday, February 23, 2011, Detective Vorhauer went to Deputy Howard's residence and retrieved the item that Deputy Howard had agreed to hold for Deputy Tanabe. Detective Vorhauer inspected the contents of the black plastic garbage bag and found a contraband Bushmaster AR-15 assault rifle. Detective Vorhauer later determined that the assault rifle was not registered to Deputy Tanabe and did not qualify as an assault weapon owned and registered before the ban on owning assault weapons.

54.     Plaintiff is informed and believes and thereupon alleges that: On Monday, February 28, 2011, Detective Vorhauer met with Contra Costa County District Attorney Investigator Daryl Jackson. Jackson told Detective Vorhauer that a search of Private Investigator Butler's cell phone confirmed that Deputy Tanabe and Butler had made arrangements to have

Plaintiff arrested. Additionally, Jackson provided Detective Vorhauer with additional information relating to a second "Dirty DUI" arrest by Deputy Tanabe on January 9, 2011.

55.     Plaintiff is informed and believes and thereupon alleges that: Detective Vorhauer discovered additional information relating to a third "Dirty DUI" arrest on November 2, 2010 in which Deputy Tanabe – while off duty – tipped off Deputy Tom Henderson ("Deputy Henderson") of the Contra Costa Sheriff's Office. Specifically, Deputy Henderson stated that he received a call from Deputy Tanabe in which Deputy Tanabe told him that he was off duty in a bar in the downtown area of Danville and an individual was drinking heavily and would be leaving the bar soon. Deputy Tanabe asked Deputy Henderson to conduct a traffic stop for DUI once the individual left the bar. Deputy Tanabe further told Deputy Henderson that the individual was being targeted because the individual was cheating on his wife and they (Private Investigator Butler and Deputy Tanabe) wanted to "dirty him up" for a future court case. Deputy Tanabe provided a description of the individual's vehicle and told Deputy Henderson that the individual was leaving the bar. Deputy Henderson parked on a side street and waited for the vehicle to pass by his patrol car. Deputy Henderson then conducted a traffic enforcement stop on the individual for driving 35 mph in a 25 mph zone. Deputy Henderson asked Deputy Robert Durrer to conduct the DUI investigation. Deputy Durrer determined that the individual was under the influence of an alcoholic beverage and arrested him for driving under the influence.

56.     Plaintiff is informed and believes and thereupon alleges that: Detective Vorhauer reviewed the text messages retrieved from Private Investigator Butler's cell phone. On January 22, 2011, Private Investigator Butler wrote Deputy Tanabe a text message that stated: "Steve, can you get an update on the DUI case involving [the individual arrested on November 2, 2010 by Deputy Durrer]."

57.     On March 4, 2011, Detective Vorhauer stated under penalty of perjury in his Affidavit for Search Warrant for the issuance of a Search Warrant for Deputy Tanabe's residence located at 1872 Green Valley Road, Alamo, California in pertinent part: "It is my opinion that Deputy Tanabe has abused his police powers and has been acting as an agent of Butler while on duty as an Officer of the City of Danville…. It is my belief … that Deputy Tanabe and Butler

have conspired to set up other individuals to be arrested for driving under the influence of an alcoholic beverage. I believe that Deputy Tanabe and/or Butler are receiving financial benefits from clients of Butler's private investigation business by creating a situation in which the target will be entrapped and will inevitably become a victim of a "Dirty DUI" vehicle stop." (A true copy of the March 4, 2011 Affidavit for Search Warrant by Detective Vorhauer is attached as Exhibit E).

58.    On March 25, 2011, Senior Deputy District Attorney of the Contra Costa County Office of the District Attorney wrote a letter to counsel for Plaintiff in the criminal matter involving Plaintiff's arrest for driving under the influence that provided in pertinent part: "It is my best legal opinion your client, Mitchell Katz, was the victim of an intentional conspiracy to entrap targeted victims of Tanabe's accomplice, Christopher Butler, and consequently the arrest of Mr. Katz was unlawful." (A true copy of the March 25, 2011 letter is attached as Exhibit F).

## IV.    STATEMENT OF DAMAGES

59.    As a result of the acts and/or omissions of Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe, Deputy Howard, County, Danville and Does One through Fifty, and each of them, Plaintiff incurred expenses relating to defending against the Dirty DUI, including attorneys' fees and costs, in amounts to be determined according to proof.

60.    As a result of the acts and/or omissions of Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe, Deputy Howard, County, Danville and Does One through Fifty, and each of them, Plaintiff suffered injury to his reputation in the community.

61.    As a result of the acts and/or omissions of Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe, Deputy Howard, County, Danville and Does One through Fifty, and each of them, Plaintiff suffered lost employment opportunities.

62.    As a result of the acts and/or omissions of Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe, Deputy Howard, County, Danville and Does One through Fifty, and each of them, Plaintiff's business Mitchell Katz Winery was damaged.

63.    As a result of the acts and/or omissions of Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe, Deputy Howard, County, Danville and Does

One through Fifty, and each of them, Plaintiff suffered emotional distress including suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame, in amounts to be determined according to proof.

64.     As set forth above, the acts and/or omissions of Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe, Deputy Howard, and Does One through Fifty, and each of them, were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the constitutional rights and state law rights of Plaintiff. Plaintiff therefore will seek an award of punitive and exemplary damages, against Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe, Deputy Howard, and Does One through Fifty, and each of them, in amounts to be determined according to proof.

65.     Plaintiff retained private counsel to represent him in this matter and is entitled to an award of attorneys' fees, pursuant to 42 U.S.C. Section 1988.

## V.     PLAINTIFFS' CLAIMS

All claims for relief set forth below incorporate all of the facts set forth above.

### FIRST CLAIM FOR RELIEF

### Bad Faith Arrest

### 42 U.S.C. § 1983 – Violation of the Fourth Amendment to the U.S. Constitution

### (Deputy Tanabe and Deputy Howard)

66.     The above-described Dirty DUI arrest of Plaintiff by Deputy Tanabe and Deputy Howard was the result of entrapment, without purpose or justification in law, lacked probable cause, was objectively unreasonable, was unnecessary, was not privileged in any way or protected by qualified immunity, and was in violation of the Fourth Amendment.

67.     Plaintiff is entitled to judgment against Deputy Tanabe and Deputy Howard who arrested Plaintiff or aided in the Dirty DUI arrest of Plaintiff.

/ / /

/ / /

/ / /

**SECOND CLAIM FOR RELIEF**

**Conspiracy to Commit Bad Faith Arrest**

**42 U.S.C. § 1983 – Violation of the Fourth Amendment to the U.S. Constitution**

**(Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe,**

**Deputy Howard, and Does One to Twenty-Five)**

68.     The above-described Dirty DUI arrest of Plaintiff by Deputy Tanabe and Deputy Howard was the result of a conspiracy to deprive Plaintiff of his constitutional rights by means of a scheme to entrap him to be arrested for driving under the influence of an alcoholic beverage. Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe, Deputy Howard, and Does One through Twenty-five, and each of them, agreed with each other to accomplish the Dirty DUI arrest of Plaintiff in violation of his Fourth Amendment rights.

**THIRD CLAIM FOR RELIEF**

**Egregious Official Conduct Intended to Injure Unjustified by Any Government Interest**

**42 U.S.C. § 1983 – Violation of the Fourteenth Amendment to the U.S. Constitution**

**(Deputy Tanabe and Deputy Howard)**

69.     The above-described Dirty DUI arrest of Plaintiff by Deputy Tanabe and Deputy Howard was the result of entrapment, without purpose or justification in law, was subjectively unreasonable, was unnecessary, was not privileged in any way or protected by qualified immunity, and was in violation of the Fourteenth Amendment. "Entrapment is indistinguishable from other law enforcement practices which the courts have held to violate due process. Entrapment is an affront to the basic concepts of justice. Where it exists, law enforcement techniques become contrary to the established law of the land as an impairment to due process." *Baker v. McCollan*, 443 U.S. 137 142-143 (1979). The actions and behavior of Deputy Tanabe and Deputy Howard in entrapping Plaintiff via a Dirty DUI arrest constituted abuses of power, which "shock the conscience", in violation of the Fourteenth Amendment.

/ / /

/ / /

/ / /

**FOURTH CLAIM FOR RELIEF**

**Conspiracy to Commit Egregious Official Conduct Intended to**

**Injure Was Unjustified by Any Government Interest**

**42 U.S.C. § 1983 – Violation of the Fourteenth Amendment to the U.S. Constitution**

**(Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe,**

**Deputy Howard, and Does One to Twenty-Five)**

70.     The above-described Dirty DUI arrest of Plaintiff by Deputy Tanabe and Deputy Howard was the result of a conspiracy to deprive Plaintiff of his constitutional rights by means of a scheme to entrap him to be arrested for driving under the influence of an alcoholic beverage. Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe, Deputy Howard, and Does One through Twenty-five, and each of them, agreed with each other to accomplish the Dirty DUI arrest of Plaintiff in violation of his Fourteenth Amendment rights.

**FIFTH CLAIM FOR RELIEF**

**Unconstitutional Hiring of Deputy Tanabe**

**42 U.S.C. § 1983 – Violation of the Fourteenth Amendment to the U.S. Constitution**

**(Sheriff Livingston and Does Twenty-Six to Fifty)**

71.     Sheriff Livingston and Does Twenty-six to Fifty, and each of them, either disregarded a known or obvious consequence of hiring Deputy Tanabe or failed to scrutinize adequately Deputy Tanabe's background before hiring him. Such actions or inactions by Sheriff Livingston and Does Twenty-six to Fifty, and each of them, in hiring Deputy Tanabe reflected deliberate indifference to the substantial risk and plainly obvious consequence that Deputy Tanabe would engage in corrupt practices in violation of the Fourth and Fourteenth Amendments following his hiring by the County and Sheriff's Office as a sworn peace officer.

72.     By and through the acts and omissions alleged herein, Sheriff Livingston and Does Twenty-six to Fifty, and each of them, unlawfully subjected Plaintiff to a Dirty DUI arrest thereby violating Plaintiff's rights under the Fourth and Fourteenth Amendments.

/ / /

/ / /

**SIXTH CLAIM FOR RELIEF**

**Unconstitutional Policy and Practice (*Monell-Adickes*)**

**42 U.S.C. §§ 1983, 1986; Fourteenth Amendment to the U.S. Constitution**

**(County of Contra Costa)**

73.     The County is liable to Plaintiff because the actions of Sheriff Livingston and Does Twenty-six to Fifty, and each of them, in hiring Deputy Tanabe (1) were caused by customs or policies of the Sheriff's Office; (2) were caused by deliberate indifference of the Sheriff's Office; and/or (3) were ratified by final decision-makers of the Sheriff's Office.

74.     Pursuant to the rules set forth in the *Monell* and *Adickes* decisions by the U.S. Supreme Court, the above described conduct of the County, its Sheriff's Office and numerous other officials, the County is jointly and severally liable with Sheriff Livingston and Does Twenty-six to Fifty, and each of them, for the injuries, deprivations and losses sustained by the Plaintiff.

**SEVENTH CLAIM FOR RELIEF**

**False Arrest and Imprisonment**

**(Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe, Deputy Howard, County, Danville and Does One to Twenty-Five)**

75.     The above-described Dirty DUI arrest of Plaintiff by Deputy Tanabe and Deputy Howard was the result of a conspiracy to deprive Plaintiff of his constitutional rights by means of a scheme to entrap him to be arrested for driving under the influence of an alcoholic beverage. Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe, Deputy Howard, County, Danville, and Does One through Twenty-five, and each of them, agreed with each other to accomplish the Dirty DUI arrest of Plaintiff in order to have Plaintiff falsely arrested and imprisoned.

76.     Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe, Deputy Howard, County, Danville and Does One through Twenty-five, and each of them, either arrested Plaintiff or caused Plaintiff to be arrested without a warrant.

77.     The conduct of Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe, Deputy Howard, County, Danville, and Does One through Twenty-five, and each of them, was a substantial factor in causing Plaintiff's harm.

## EIGHTH CLAIM FOR RELIEF

### Abuse of Process

### (Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe, Deputy Howard, County, Danville and Does One to Twenty-Five)

78.     The above-described Dirty DUI arrest of Plaintiff by Deputies Tanabe and Howard was the result of a conspiracy to deprive Plaintiff of his constitutional rights by means of a scheme to entrap him to be arrested and prosecuted for driving under the influence of an alcoholic beverage. Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe, Deputy Howard, County, Danville, and Does One through Twenty-five, and each of them, agreed with each other to accomplish the Dirty DUI arrest of Plaintiff in order to have Plaintiff falsely arrested and prosecuted.

79.     Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe, Deputy Howard, County, Danville, and Does One through Twenty-five, and each of them, caused Plaintiff to be falsely arrested and prosecuted for driving under the influence of an alcoholic beverage.

80.     Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe, Deputy Howard, County, Danville, and Does One through Twenty-five, and each of them, intentionally used the false arrest and prosecution of Plaintiff for driving under the influence of an alcoholic beverage in order for Ms. Spenger to attempt to obtain leverage over Plaintiff in the divorce proceedings and/or for Ms. Spenger's financial gain.

81.     Plaintiff was harmed by the actions of Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe, Deputy Howard, County, Danville, and Does One through Twenty-five, and each of them.

/ / /

/ / /

82.     The conduct of Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe, Deputy Howard, County, Danville, and Does One through Twenty-five, and each of them, was a substantial factor in causing Plaintiff's harm.

## NINTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

### (Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe, Deputy Howard, County, Danville and Does One to Twenty-Five)

83.     The above-described Dirty DUI arrest of Plaintiff by Deputy Tanabe and Deputy Howard was the result of a conspiracy to deprive Plaintiff of his constitutional rights by means of a scheme to entrap him to be arrested and prosecuted for driving under the influence of an alcoholic beverage. Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe, Deputy Howard, County, Danville, and Does One through Twenty-five, and each of them, agreed with each other to accomplish the Dirty DUI arrest of Plaintiff in order to intentionally inflict emotional distress upon Plaintiff.

84.     The conduct of Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe, Deputy Howard, County, Danville, and Does One through Twenty-five, and each of them, was outrageous.

85.     Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe, Deputy Howard, County, Danville, and Does One through Twenty-five, and each of them, intended to cause Plaintiff emotional distress or, in the alternative, Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe, Deputy Howard, County, Danville, and Does One through Twenty-five, and each of them, acted with reckless disregard of the probability that Plaintiff would suffer emotional distress, knowing that Plaintiff was present when he was subjected to the Dirty DUI arrest.

86.     Plaintiff suffered severe emotional distress.

87.     The conduct of Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe, Deputy Howard, County, Danville, and Does One through Twenty-five, and each of them, was a substantial factor in causing Plaintiff's severe emotional distress.

**TENTH CLAIM FOR RELIEF**

**Negligence**

**(Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe,**

**Deputy Howard, County, Danville and Does One to Twenty-Five)**

88.     Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe, Deputy Howard, County, Danville, and Does One through Twenty-five, and each of them, owed Plaintiff a duty to use reasonable care in order to prevent harm to Plaintiff;

89.     Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe, Deputy Howard, County, Danville, and Does One through Twenty-five, and each of them, were negligent in that they failed to use reasonable care in order to prevent harm to Plaintiff;

90.     Plaintiff suffered harm as a result of the negligent conduct of Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe, Deputy Howard, County, Danville, and Does One through Twenty-five, and each of them, including serious emotional distress.

91.     The negligent conduct of Defendants Ms. Spenger, Private Investigator Butler, Mr. Marino, Deputy Tanabe, Deputy Howard, County, Danville, and Does One through Twenty-five, and each of them, was a substantial factor in causing Plaintiff's harm.

**PRAYER**

1.     For compensatory damages and other special damages according to proof;

2.     For general damages according to proof;

3.     For punitive damages against all individual defendants according to proof;

4.     For prejudgment interest at the legal rate according to proof;

5.     For costs and attorney's fees; and

/ / /

/ / /

/ / /

1     6.     For such other relief as the Court may deem proper.

2     Dated: November 31, 2011

                              GEARINGER LAW GROUP
3

4                             By:
                              BRIAN GEARINGER
5                             R. STEPHEN M. LAROE
                              Attorneys for Plaintiff MITCHELL KATZ
6

7

8

9

10

11                           **JURY TRIAL DEMANDED**

12         Plaintiff Mitchell Katz demands a trial by jury in this action.

13     Dated: November 31, 2011

                              GEARINGER LAW GROUP
14

15                            By:
                              BRIAN GEARINGER
16                            R. STEPHEN M. LAROE
                              Attorneys for Plaintiff MITCHELL KATZ
17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A



*"Small Town Atmosphere*
*Outstanding Quality of Life"*

**DANVILLE**

June 2, 2011

James V. McGrail, Esq.
Law Offices of James V. McGrail
1919 Third Street
Livermore, CA 94550

Re: Claim of Mitchell Katz

## NOTICE OF STATUS OF CLAIM

**NOTICE IS HEREBY GIVEN THAT** the claim for damages for personal and/or property
damage which you presented to the Town of Danville on **May 25, 2011**, is hereby rejected this
**June 2, 2011**.

Robert B. Ewing
City Attorney

## WARNING

Subject to certain exceptions, you have only six (6) months from the date this notice was
personally delivered or deposited in the mail to file a court action on this claim. See
Government Code Section 945.6. This warning does not extend the statute of limitations
involving any Federal cause of action.

## CERTIFICATE OF SERVICE BY MAIL

Under penalty of perjury, the undersigned declares:

That the undersigned is a citizen of the United States, over 18 years of age, and not a party to
the within action; that the undersigned's business address is 510 La Gonda Way, Danville, CA
94526.

That on **June 2, 2011**, the undersigned served the above Notice of Status of Claim by placing a
true copy thereof in an envelope addressed to:

James V. McGrail, Esq.
Law Offices of James V. McGrail
1919 Third Street
Livermore, CA 94550

510 LA GONDA WAY, DANVILLE, CALIFORNIA 94526

| Administration | Building | Engineering & Planning | Transportation | Maintenance | Police | Parks and Recreation |
|---|---|---|---|---|---|---|
| (925) 314-3388 | (925) 314-3330 | (925) 314-3310 | (925) 314-3310 | (925) 314-3450 | (925) 314-3410 | (925) 314-3400 |

EXHIBIT B



CLAIM

## BOARD OF SUPERVISORS OF CONTRA COSTA COUNTY

**BOARD ACTION:** 06/28/2011

Claim Against the County, or District Governed by )
the Board of Supervisors, Routing Endorsements, )
and Board Action. All Section references are to )
California Government Codes. )
)

NOTICE TO CLAIMANT
The copy of this document mailed to you is your notice of
the action taken on your claim by the Board of
Supervisors (Paragraph IV below), given Pursuant to
Government Code Sections 913, 915.2, 915.4.
Please note all "Warnings".

AMOUNT: Unknown

CLAIMANT: Mitchell Katz

ATTORNEY: Law Offices of James V. McGrail

ADDRESS: 1919 Third St.

BY DELIVERY TO COB ON: _____

Livermore, CA 94550

BY MAIL TO COB POSTMARKED: 05/25/2011

---

I.    FROM:   Clerk of the Board of Supervisors

TO:  County Counsel
Attached is a copy of the above-noted claim.
DAVID TWA, Clerk
By:  Deputy _____

Dated: 06/02/11

---

II.   FROM:   County Counsel

TO: Clerk of the Board of Supervisors

_____ This claim complies substantially with Sections 910 and 910.2.

_____ This Claim FAILS to comply substantially with Sections 910 and 910.2, and we are so notifying claimant.
The Board cannot act for 15 days (Section 910.8).

_____ Claim is not timely filed. The Clerk should return claim on ground that it was filed late and send warning
of claimant's right to apply for leave to present a late claim (Section 911.3).

_____ Other: _____

Dated: 6/9/11                    By: _____              Deputy County Counsel

---

III.  FROM:  Clerk of the Board     TO:     County Counsel (1)          County Administrator (2)
Claim was returned as untimely with notice to claimant (Section 911.3).

---

IV.   BOARD ORDER:  By unanimous vote of the Supervisors present:
      This Claim is rejected in full.
      Other: _____

I certify that this is a true and correct copy of the Board's Order entered in its minutes for this date.

Dated: 06/28/11          DAVID TWA, CLERK, By _____, Deputy Clerk

WARNING (Gov. Code section 913)

Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or
deposited in the mail to file a court action on this claim. See Government Code Section 945.6. You may seek the advice of
an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so
immediately.   *For Additional Warning See Reverse Side of This Notice.

AFFIDAVIT OF MAILING

I declare under penalty of perjury that I am now, and at all times herein mentioned, have been a citizen of the United
States, over age 18; and that today I deposited in the United States Postal Service in Martinez, California, postage fully
prepaid a certified copy of this Board Order and Notice to Claimant, addressed to the claimant or claimant's attorney as
shown above.

Dated: 06/28/11          DAVID TWA, CLERK, By _____, Deputy Clerk

# EXHIBIT C

# Butler & Associates Private Investigations

## Client Service Agreement – Case #CB101123

This Agreement is made this 23rd day of November, 2010, between Butler & Associates Private Investigations, P.O. Box 30755, Walnut Creek, CA  94598 (hereinafter referred to as "B&A") and Mrs. Alicia Katz, 1136 Crystal Court, Livermore, CA 94450, (hereinafter referred to as "Client").

## Services

B&A agrees to furnish to Client the following:

Vehicle GPS System

## Assignment Criteria

B&A personnel will act in a professional manner and operate within the bounds of the law in executing the following assignments:

**Provide the Client with installation of a vehicle GPS system on the Client's vehicle.  Provide the Client with the removal of the vehicle GPS system at the Client's request.**

## Investigative Rates

Client agrees to pay B&A the sum of **$199 (one hundred ninety-nine dollars)** for the vehicle GPS system installation, plus a **$200 (two hundred dollars)** refundable deposit for the vehicle GPS system hardware, plus **$250 (two hundred fifty dollars)** per month to keep the vehicle GPS system active.  The vehicle GPS hardware shall be removed at no cost to the Client, with the deposit returned to the Client upon removal of the system, only if the Client returns to the B&A office within 30 days following the system service termination.  If the Client chooses to keep the system equipment or fails to return the system to B&A within 30 days of service termination, the Client agrees to forfeit the **$200 (two hundred dollars)** deposit and may keep the GPS system hardware.  If the Client requests that B&A personnel travel to any location to remove the GPS system, The Client agrees to pay travel time at the rate of **$99.00 (ninety-nine dollars)** per hour for all travel from the B&A office in Concord, CA, to the designated location, and upon return.

If B&A personnel are required to give a deposition or appear at a court hearing regarding this assignment, the Client agrees to pay for such service at the rate of **$99.00 (ninety-nine dollars)** per hour, per person. A charge of **.50 per mile** for mileage shall be accrued by the Client for all travel from the B&A office in Concord, CA, to the designated location, and upon return.

Client Initials _ask_

## Parameters of Use

Client has assured B&A that they possess a proprietary interest in the vehicle receiving the GPS equipment installation. Client understands that the vehicle GPS system is hardware that remotely transmits data that will determine the location of their vehicle. Client has assured B&A that the equipment will not be removed, altered, or used in any way for which the equipment and/or the installation was not intended. Client understands that the use and operation of the vehicle GPS system is the sole responsibility of the Client and further understands that B&A has no control over the Client's subsequent use of the equipment.

Client Initials  _____

## Existence of Court Orders / Criminal Conduct

Client has assured B&A that no court order, including but not limited to, emergency protective order, temporary restraining order, stay away order, or order after hearing, is currently in effect against the Client by any party involved in this matter. Client further assures B&A that they are not engaged in any criminal conduct towards the subject of this investigation, including but not limited to, stalking or harassing. Client agrees to refrain from recording any sound transmitted by the installed system and understands that recording is against the law. Client agrees that failure to disclose any court order information; criminal conduct or recording from the sound system to B&A shall result in the complete forfeiture of any deposit or retainer to B&A and immediately terminate this agreement.

Client Initials  _____

## Cancellation Agreement

In the event the Client chooses to cancel this agreement for any reason prior to the beginning of any investigative work performed by B&A personnel, B&A may impose, and the Client agrees to pay, a minimum service charge of $50.00. If a cancellation occurs during the assignment, the Client agrees to pay a minimum of four hours work performed. For any cancellation within a 24-hour time period prior to the start of a prescribed surveillance assignment, the Client agrees to pay a minimum of four hours work performed.

Client Initials  _____

## Credit Card Payment Agreement

In the event the Client agrees to pay for investigative or other services with a credit card, Client acknowledges that all charges applied to their credit card will appear on their credit card receipt and on their credit card statement as "Green Design Group". Client acknowledges and agrees that by providing their credit card information to Butler & Associates, they are authorizing the use of their credit card for any and all current and subsequent fees resulting from the Client's requests for services. The Client has provided the following credit card information for charges related to this case:

Card Type: _MK_  Card Number: _5445 6530 0031 5805_  Exp. Date: _07/11_
Card Billing Address: _1136 Crystal Court, Livermore, CA 94550_

Client Initials  _____

B&A agrees to prevent the release of any and all notes, documents, reports, photographs, audiotapes, videotapes, and statements arising out of this investigation to any other person, department, business, or entity without the express written consent of the Client.   Valid court orders signed by a judge are exempt from this confidentiality agreement.

Client Initials _____

## Indemnification and Liability

Client agrees to indemnify and hold B&A harmless from all claims, losses, expenses, fees including attorney fees, costs, and judgments that may be asserted against B&A that result from the acts or omissions of Client, Client's employees, if any, and Client's agents.   B&A agrees that it will indemnify and hold Client harmless for any claims, losses, or expenses incurred by Client as a result of the negligent acts of B&A.   Each party to this agreement is responsible for obtaining their own insurance.

Client Initials _____

## Additional

This agreement sets forth the entire understanding and agreement between B&A and Client.   This agreement supersedes any prior or contemporaneous oral or written agreements or representations; it may be modified by a written amendment duly executed by both parties.   This agreement shall be interpreted in accordance with the laws of the State of California.

Client: _ALICIA KATZ_
(print name)

Signature: _Alicia Katz_

Date: _11-22-10_

B&A: _Chris Butler_
(print name)

Signature: _____

Date: _11/23/10_

EXHIBIT D

## Mitchell Katz

| | |
|---|---|
| **From:** | <JohnArtistFilm@aol.com> |
| **Date:** | Thursday, March 31, 2011 2:32 PM |
| **To:** | <mk.winery@sbcglobal.net> |
| **Subject:** | Re: Friday's meeting |

She knew exactly what we were doing. She is the one that wanted us to go to the winery with the camera and do those interviews after the initial set up. She paid an extra $1500 to Butler for that. She thought it would look more legitimate. I actually tried to talk her out of it but she was adamant. I would like to meet up with you soon and I can explain more. My schedule is kind of crazy right now. I will let you know what would work for me and we can go from there. Take care.

In a message dated 3/30/2011 3:26:39 P.M. Pacific Daylight Time, mk.winery@sbcglobal.net writes:

> ### Did my wife know that is what you guys were doing?
>
> **From:** JohnArtistFilm@aol.com
> **Sent:** Wednesday, March 30, 2011 2:30 PM
> **To:** mk.winery@sbcglobal.net
> **Subject:** Re: Friday's meeting
>
> Hey Mitch,
>
> I hope you are doing well. The first thing I want to do is apologize to you for my part of the set up. As you can see, I never wanted to be involved in Butler's shady activities and that is why I put an end to them and also let the DOJ know what was done to you and others. I hope you can forgive me and understand that ultimately I was the good guy in this. I would love to apologize to you in person and answer any questions that you might have of me. Let me know if you would be interested in this. Thanks.
>
> "John"
>
> In a message dated 3/27/2011 3:31:49 P.M. Pacific Daylight Time, mk.winery@sbcglobal.net writes:
>
> > ### Are you the guy Diablo magazine refers to as Rutherford
> >
> > **From:** JohnArtistFilm@aol.com
> > **Sent:** Monday, January 24, 2011 10:49 AM
> > **To:** mk.winery@sbcglobal.net
> > **Subject:** Re: Friday's meeting
> >
> > Hey Mitch,
> >
> > It was great seeing you at your winery and getting to meet all of the people who work with you. We were impressed with how everything runs and how the people there feel like a family. It is also a gorgeous location to shoot at. We are at the part of the process now that takes a little time. We have other people looking at the footage and information provided. They are evaluating everything and determining the next step in the process, budget, etc., before we can start to film anything. There are no guarantees on the project, but we are confident that it is something that we can put together well enough to pitch to the networks, primarily the people at A&E. I will keep you informed as things progress, but now it is kind of a waiting game. If you have any questions, feel free to let me know what they are at any time. We just need to be patient now. Thanks again for opening up your winery and your life to us.
> >
> > John
> >
> > In a message dated 1/18/2011 4:35:44 P.M. Pacific Standard Time, mk.winery@sbcglobal.net writes:
> >
> > > Sounds good
> > >
> > > Sent from my iPhone by mitch
> > >
> > > On Jan 18, 2011, at 4:23 PM, JohnArtistFilm@aol.com wrote:
> > >
> > > > Hi Mitch,
> > > >
> > > > I wanted to check your availability for the tour of the winery on Friday. I will be bringing a small crew with me and I was hoping that we could start around 1

pm. I will have a camera guy that will be taking some footage, but this is not for any broadcast reasons. We will just use this footage for production purposes. We just want the layout of grounds and building. We would also like to meet some of the people who are working. It will be very casual. We will not interrupt them while they are doing their jobs and would only do a quick introduction. We just kind of want to get an overview on how the winery operates, the people there, and what the set up is. Please let me know as soon as you can if this works for you. You can just respond to this email or give me a call. I look forward to moving forward with this. Thanks.

John

# EXHIBIT E

# COUNTY OF CONTRA COSTA, STATE OF CALIFORNIA

## AFFIDAVIT FOR SEARCH WARRANT No. M11-128

☐ → **And, AFFIDAVIT FOR RAMEY ARREST WARRANT (817 P.C.)**

Mark If Applicable

On the basis of her personal knowledge, and on the basis of other information contained in the attachments hereto, *Sergeant Detective Jason Vorhauer* being duly sworn, deposes and says that there is probable cause to believe the property and/or person(s) described herein may be found at the location(s) set forth. And, that the following provisions of California Penal Code Section 1524 are applicable:

☐ The property was stolen or embezzled - Penal Code 1524(a)(1).

☒ The property or thing(s) were used as the means of committing a felony - Penal Code 1524(a)(2).

☒ The property or thing(s) are in the possession of any person with the intent to use it as a means of committing a public offense; OR are in the possession of another to whom he or she may have delivered it for the purpose of concealing it or preventing it from being discovered - Penal Code 1524(a)(3).

☒ The property or thing(s) consist of any item or constitutes any evidence that tends to show a felony has been committed or tends to show that a particular person has committed a felony - Penal Code 1524(a)(4).

☐ The property or things consist of evidence which tends to show that sexual exploitation of a child in violation of Section 311.3, or possession of matter depicting sexual conduct of a person under the age of 18 years in violation of 311.11, has occurred or is occurring - Penal Code 1524(a)(5).

☐ An arrest warrant is outstanding for the person to be seized - Penal Code 1524(a)(6).

☐ Because this is a search for documentary evidence which is in the possession or under the control of a lawyer, physician, psychotherapist or clergyman who is not a suspect in the criminal activity to which the documentary evidence being sought relates, the Special Master provisions are applicable - **Penal Code 1524(c)**.

and requests the issuance of a warrant to search:

**THE PREMISES** located at and described as: 1872 Green Valley Road, Alamo, California, 94507 further described as a single-story dwelling house with a black composite roof and tan wood exterior, and white trim. Additionally, the residence is surrounded by a natural colored wood fence. The numbers 1872 are affixed vertically to the pedestrian gate leading to the front entrance of the residence. The search of the residence is to include all rooms, attics, basements, and other parts therein; the surrounding grounds and any garages, storage rooms, trash containers, and outbuildings of any kind located thereon which could contain any of the items sought.

The Premises includes basem ts, attics, appurtenant buildings, an
containers therein and thereon — ch could contain any of the item — ought.

**THE CONTAINER(S)** located at and described as:

**THE VEHICLE(S)** described as: Any and all vehicles found to be under the care, dominion and or control of the residents, as evidence by titles, registrations, and releases of liabilities, keys or other documentation. Including the passenger compartment, storage areas such as the trunk and glove compartment, and any containers within the vehicles(s) and or vessels(s) which could contain any of the items sought

The vehicle includes the passenger compartment, storage areas such as the trunk and glove box, and any container within the vehicle(s) which could contain any of the items sought.

**THE PERSON(S)** of: Tanabe, Stephen R, Adult Asian Male, DOB 6/15/1963, DL# B6289363, Hair: Black, Eyes: Brown, HGT: 511, WGT, 240

FOR THE FOLLOWING **PROPERTY, THINGS** AND/OR **PERSON(S)**

☐ Listed in Exhibit       , attached
☒ Listed below

**1.** (2) saliva buccal DNA samples of saliva from the inside of the mouth of Stephen R Tanabe, DOB 6/15/1963. The samples are to be collected by investigators. The officer serving this search warrant is authorized by the court to inform Stephen R Tanabe that he has no legal right to refuse to submit to this search warrant. If Stephen R Tanabe resists, the court hereby authorizes the officer to use reasonable force which does not shock the conscience to obtain the evidence as long as the collection of the evidence is done in a medically approved manner. Stephen R Tanabe may also be advised that he has no legal right to have an attorney present during the service of this search warrant and may not refused or impeded the service of this search warrant because an attorney is not present.

**2.** Indicia such as mail, bank statements, keys, documents, etc. that would tend to prove who resides or occasionally occupies the place being searched.

**3.** To search/seize the contents and cellular phone (925-565-1588) belonging to Stephen R Tanabe for all information stored to include records of all stored contacts and telephone numbers, all placed telephone calls, all missed telephone calls, all sms/text messages and all images files.

**4.** Any and all firearms/weapons that by their nature is illegal to posses.

**5.** All electronic data processing and storage devices, computers and computer systems, such as central processing units, internal and peripheral storage devices such as fixed disks, internal and external hard drives, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, dongles, encryption keys, personal data assistants (PDA's) or other memory storage devices; and any/all peripheral input/output devices such as keyboards, printers, video display monitors, optical readers and related communication devices such as modems, associated telephone sets, speed dialers, and/or other controlling devices, plotters, software to run programs, connecting cables

interface devices, system documentation, operating logs and documentation, software and instructional manuals. Computing or data processing software, stored on any type of medium such as: hard disks, floppy disks, CD-R's, CD-RW's, DVD's, cassette tapes, or other permanent or transient storage medium. Any records, whether stored on paper, on magnetic media such as tape, cassette, disk, diskette or on memory storage devices such as optical disks, programmable instruments such as telephones, "electronic calendar\address books" calculators, or any other storage media, together with indicia of use, ownership, possession, or control of such records. Any written or computer communication in printed or stored medium such as E-Mail and Chat Logs whether in active files, deleted files or unallocated space on the hard drive, floppy drive or any data storage media. Search of all of the above items is for files, data, images, software, operating systems, deleted files, altered files, system configurations, drive and disk configurations, date and time, and unallocated and slack space, for evidence. With respect to computer systems and any items listed above found during the execution with this Search Warrant, the searching Peace Officers are authorized to seize and book said computer systems and any items listed above and transfer them to a Law Enforcement Agency location prior to commencing the search of the items. Furthermore, said search may continue beyond the ten-day period beginning upon issuance of this Search Warrant, to the extent necessary to complete the search on the computer systems and any items listed above.

6. Peace Officers during the execution of this Search Warrant may answer telephones and converse with callers at the location of this Search Warrant without revealing the Peace Officers true identity, and note and/or record any conversations and information received from the telephone calls, including caller identification information.

The Attachments indicated below are incorporated into this Affidavit by reference and by physical attachment as though set forth here word-for-word; probable cause contained in:

☒ Narrative Statement of Probable Cause:

# Statement of Probable Cause

Affiant Sergeant Detective Jason Vorhauer is a Peace Officer with the Contra Costa County Sheriff's Office and has been so employed for over ten years. Affiant is currently assigned to the General Investigations Unit.

On February 23, 2011 at approximately 1500 hours, I conducted an interview with Reserve/Per Diem Deputy William Howard. Howard wanted to speak to me about the recent arrest of CNET Commander Norm Weilch and Private Investigator Christopher Butler for Narcotics trafficking.

Howard said that he had information about current Contra Costa County Sheriff Deputy Stephen Tanabe. Howard believed Tanabe could be involved in some possible illegal activity with Butler.

Howard stated in substance that he had met Tanabe while working as a per-diem Deputy in our Court Services Division. Howard said that he has also worked a few shifts with Tanabe on patrol in the City of Danville. Howard stated that he and Tanabe have a casual/friendly/business relationship.

Howard said that on January 14, 2011, he was on patrol with Tanabe in the City of Danville. Howard said that during this shift Tanabe received approximately eight to ten personal cell

phone calls from someone Tanabe identified as his "PI friend". The "PI friend" was later identified as Christopher Butler by Tanabe. Howard said during these phone calls, it appeared Deputy Tanabe was receiving updates about an individual, who was later identified as Mitchell Katz, who was currently drinking alcoholic beverages at a wine bar (The Vine). Howard said he could only hear Tanabe's side of the conversation but it appeared Butler was giving him updated information relating to Katz's sobriety.

As the conversation continued, Butler gave Tanabe a description of the vehicle Katz would be driving once he left the bar. Tanabe drove around the immediate vicinity of the bar and located a white pickup truck that was being described by Butler as belonging to Katz. Additionally, while driving past the bar Tanabe asked Butler if that was him in the Hummer parked next to the bar. As Tanabe drove by the Hummer, Howard could see that the Hummer was occupied by a male subject (When Butler was arrested by DOJ a Hummer belonging to Butler was seized).

Howard said that after locating the white pickup truck, Tanabe found a location close to the vehicle in which he could hide his police vehicle and watch the pickup. Howard said a short time later Katz came out of the bar and approached the pickup. Howard said that Tanabe confirmed with Butler that the individual at the pickup was the intended target. Katz then got into the pickup and drove a short distance and then parked the vehicle a short distance from the bar. Katz got out of the pickup and went back into the bar. After a short wait Katz again exited the bar and got into his pickup truck and drove away.

At some point during this event Howard asked Tanabe what was going on. Tanabe told him they were about to conduct a "Dirty DUI" stop on Katz.

According to Howard, as Katz drove away Tanabe pulled in behind Katz and followed Katz for a short period of time. At some point while they were following the pickup, Katz made a right hand turn without signaling. Tanabe conducted a traffic enforcement stop based on this probable cause, according to Howard.

Tanabe conducted a DUI investigation and subsequently arrested Katz for driving under the influence of an alcoholic beverage (Sheriffs DR#11-824).

Shortly after processing Katz at the Danville Police Station he was transported to the Martinez Detention Facility. While discussing the arrest of Katz, Howard told Tanabe that he felt sorry for Katz because just before the arrest Katz was in the bar discussing a deal to be featured in a reality show. Howard felt that this arrest might affect Katz's chances of getting a show. Tanabe told Howard not to worry about because the whole thing was a "set up". Tanabe did not explain to Howard what "set up" meant. Additionally, Tanabe said that the incident occurred because Katz needed to be "dirtied" up for a future court date. Howard felt uncomfortable with the arrest but because of his inexperience did not question the incident.

On February 16, 2011 (The day Wielch and Butler were arrested) at approximately 2000 hours, Tanabe called Deputy Howard at his residence. Tanabe asked Howard if he was going to be home and asked Howard if he could come over and visit. Howard agreed to meet with Tanabe. Howard said that he could tell that something was bothering Tanabe.

When Tanabe arrived he asked Howard if he had been watching the news about Wielch and Butler's arrest. Howard told Tanabe that he had not watched the news yet. Tanabe went on to tell Howard about the arrest of Wielch and Butler. Tanabe said that he felt that his phone



1.98                    AFFIDAVIT - PAGE 4

was probably "bugged" because of his personal relationship with Butler. Deputy Tanabe confirmed that the "PI friend" was indeed Butler.

Tanabe went on to tell Howard that they could no longer talk on the phone because they were probably being "bugged". Tanabe went on to tell Howard that the police were going to start investigating him because of the "Dirty DUI's".

Tanabe said that he knew the police were going to be serving a search warrant on his home soon and he was concerned because an item that he possessed was going to be found during the search warrant of his residence. Tanabe asked if he could leave something at Howard's home until things settled down. Tanabe also told Howard that he had already instructed his wife on how to act when police served the warrant. Tanabe said that he felt when police served the warrant they would kill his dog to punish him.

Howard agreed to take the item. Tanabe went out to his vehicle and grabbed an item covered with a black plastic garbage bag. Tanabe asked that Howard place the item in his attic to keep it hidden. Deputy Howard said that he felt uncomfortable with what Tanabe was asking him to do but he did not want to cause a confrontation so he took the item.

Howard told me that he did not look in the bag and did not know what it contained. Howard said that after a week of having the item and hearing more information about the Wielch and Butler arrests he felt that he might be hiding something illegal. After much thought Howard decided to contact the Sheriff's Office and turn over the item that Tanabe had asked him to hide.

I asked Howard what he knew about Tanabe and Butler's relationship. Howard said that he knew that Tanabe had worked for Butler at his private investigations business, shortly after Tanabe was fired from Antioch Police Department. Howard believed that Butler and Tanabe spoke to each other approximately three to four times a week. Howard also said that Tanabe was recently conducting surveillance for Butler while being employed by the Contra Costa County Sheriff's Department.

On February 23, 2011 at approximately, 1700 hours I went to Howard's residence and retrieved the item in question. Upon inspecting the contents of the black bag I found a Bushmaster AR-15 assault rifle (Model# XM15-E2S Serial.# L106686).

On February 24, 2011, I took the rifle to the Contra Costa County Crime Lab. I requested the rifle be processed for fingerprints and the presence of DNA. The rifle was processed for DNA and a DNA sample was present and has been saved awaiting a comparison sample. The rifle was also processed for finger prints with negative results.

Additionally, I had the weapon inspected by Criminalist Eric Collins. Collins is the Sheriff Office weapons expert. Collins determined the rifles barrel length was approximately 10 7/8 inches long and is a short barreled rifle as defined in California Penal Code Section 12020.

In addition, the rifle is a semiautomatic center fire rifle that accepts a detachable magazine, has a pistol grip, telescoping stock, and a flash suppressor, and has an overall length of less than 30 inches. This rifle had a maximum overall length of 29 ¾ inches with the stock fully extended. The rifle is was determined to be an assault weapon as defined in California Penal Code 12276.1. A records check through the ATF determined that the rifle was not registered to Deputy Tanabe and does not qualify as an assault weapon owned and registered before the ban.

On February 28, 2011; I met with District Attorney Investigator Daryl Jackson. Jackson told me that a search of Butler's cell phone confirmed that Tanabe and Butler had made arrangements to have Katz arrested. Additionally, it was discovered that there was information on Butler's cell in regards to a second arrest of Hasan Aksu on January 9, 2011. I conducted a records check and found that Aksu was indeed arrested on January 9, 2011 by Tanabe for driving under the influence of an alcoholic beverage (Sheriff's DR#516). It appears that Aksu was a targeted by Tanabe and Butler based on the text messages.

On March 2, 2011, I conducted an interview with Deputy Tom Henderson of the Contra Costa County Sheriff's Department. Deputy Henderson had information regarding a DUI investigation that he was part of in which he felt Tanabe was acting as an agent of Butler. Deputy Henderson said that he could not remember the suspect's name or which day he conducted the DUI stop. Deputy Henderson does remember receiving a phone call from Tanabe in which Tanabe told him that he was off duty in a bar in the downtown area of Danville and an individual, who was later identified as David Bauldry, was drinking heavily and would be leaving the bar soon.

Tanabe asked Deputy Henderson to conduct a traffic stop for DUI once Bauldry left the bar. Tanabe went on to explain to Henderson that Bauldry was being targeted because Bauldry was cheating on his wife and they (Butler and Tanabe) wanted to "Dirty him up" for a future court case. Tanabe provided a description of Bauldry's vehicle and told Deputy Henderson that he was leaving the bar. Deputy Henderson parked on a side street and watched the vehicle drive by. Deputy Henderson visual estimated the vehicle was traveling approximately 35 mph in a 25 mph zone. Deputy Henderson activated his radar and got a reading of 35 mph. Deputy Henderson conducted a traffic enforcement stop for CVC 22350.

Deputy Henderson told me that once he stopped the vehicle he asked Deputy Robert Durrer to conduct the DUI investigation. Deputy Durrer determined that Bauldry was under the influence of an alcoholic beverage and arrested him for CVC 23152 (A). Through my investigation I was able to determine that the arrest in question occurred on November 2, 2010, Sheriff's DR#10-20314.

After reviewing the text messages taken from Butlers cell phone. On January 22, 2011 at approximately 1815 hours, Butler wrote Tanabe a text message that read as follows "Steve, can you get an update on the DUI case involving David Lane Bauldry."

On March 3, 2011, I met with Jackson to discuss the DUI stop of Katz. Jackson told me that upon investigation of Butler's records, it appears that Katz's wife paid Butler approximately five thousand dollars to conduct an investigation into her husband.

I was able to confirm Tanabe's place of residence through his personnel records kept by the Sheriff's Office. I could not check Tanabe's DMV record for his listed address due to Tanabe having access to Sheriff's Office database. A record of my inquiry into his DMV records could easily be discovered by Tanabe thus jeopardizing the ongoing investigation.

I have reasonable cause to believe that grounds exist for the issuance of a search warrant based on the content of this affidavit which includes the above-referenced attachments, and pray that a search warrant be issued.

☐     The following listed official police reports and records; and documents, exhibits and photographs:

☒     Statement(s) of expertise and opinion:

Through my training and experience and the facts stated in my above probable cause declaration it is my opinion that Tanabe possessed an illegal assault rifle as defined by Penal Code sections 12020 and 12276.1. It is my belief that Tanabe took the rifle to Howard's residence to avoid it being discovered during a search warrant he felt was forth coming due to his participation of "Dirty DUI" arrests in which he had been acting as an agent for Butler. I am requesting a search warrant be issued for Tanabe's DNA to confirm the sample DNA taken from the seized rifle. It is my opinion that the DNA samples taken from the rifle will match the samples taken from Tanabe.

I am also asking that a search of Tanabe's residence be authorized for additional illegal firearms/weapons. Through my training and experience I have found that those who possess illegal firearms/weapon tend to own additional illegal firearms/weapons. These items are quite often concealed in the residence of the individual in question. I believe a search of Deputy Tanabe's residence will yield additional illegal firearms/weapons.

It is my opinion that Deputy Tanabe has abused his police powers and has been acting as an agent of Butler while on duty as an Officer of the City of Danville. I am asking a search warrant for Deputy Tanabe's cell phone and computer and any other electronic storage device be issued. It is my belief that a search of these items will result in additional information confirming that Deputy Tanabe and Butler have conspired to set up other individuals to be arrested for driving under the influence of an alcoholic beverage. I believe that Deputy Tanabe and/or Butler are receiving financial benefits from clients of Butler's private investigation business by creating a situation in which the target will be entrapped and will inevitably become a victim of a "Dirty DUI" vehicle stop.

I certify (or declare) under penalty of perjury under the laws of the State of California that the information in this Affidavit is true and correct:

_____       _____
            **Affiant**                                          **Affiant**

Subscribed to and sworn before me this _4th_ day of _March, 2011_

11/5?   AM - PM

_____ Judge of the Superior Court of Contra Costa County

RICHARD E. ARNASON

EXHIBIT F



CONTRA COSTA COUNTY
**Office of the District Attorney**
Mark A. Peterson
District Attorney

Mr. James McGrail
1919 3rd Street
Livermore, CA
94550
925-606-7037 (fax)

Re: Mitchell Katz
    Danville P.D. #11-824

Dear Mr. McGrail,                                                                    March 25, 2011

 As you are aware, a rather disturbing series of events surrounding two law enforcement officers, former Commander Norman Wielsch of the Department of Justice, and former Deputy Stephen Tanabe of the Danville Police Department, has required this office to thoroughly review all pending cases initiated by either of those officers.

 Given their conduct in the performance of their duties, and the serious compromises to their integrity as a result thereof, this office is compelled to conclude that nothing they have done in the recent past can be characterized as trustworthy. That conduct includes the commission of criminal offenses and deliberately setting people up ("entrapment") in order to gain financial or other types of advantages unrelated to their sworn duties. As a result, a number of cases must either be dismissed or NCF'd for lack of (credible) evidence, and in the interests of justice. Mitchell Katz's January 2011 arrest by Tanabe in case #11-824 is one such case.

 Please be advised the People have not and will not file that case. It will be NCF'd for lack of sufficient credible evidence. Please be further advised it is my best legal opinion your client, Mitchell Katz, was the victim of an intentional conspiracy to entrap targeted victims of Tanabe's accomplice, Christopher Butler, and consequently the arrest of Mr. Katz was unlawful.

 If you have any questions, please do not hesitate to call.

Sincerely,

Harold W. Jewett
Senior Deputy District Attorney